IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RONDARIUS WILLIAMSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | NO. 3:16-cv-00075 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

## I.      INTRODUCTION

Pending before the Court are Petitioner's Second Motion to Vacate Judgment Pursuant to

Title 28 U.S.C. § 2255 (Doc. No. 84); the Government's Response (Doc. No. 85); Petitioner's

Reply (Doc. No. 88); Petitioner's Notice of Related Cases (Doc. No. 89); the Government's Sur-

Reply (Doc. No. 92); Petitioner's Sur-Reply (Doc. No. 95); and the Government's Notice of

Supplemental Authority (Doc. No. 96).

For the reasons set forth herein, Petitioner's Second Motion to Vacate (Doc. No. 84) is

**DENIED,** and this action is **DISMISS**

## II.      PETITIONER'S CRIMINAL PROCEEDINGS

Petitioner was indicted, along with over 30 other gang-member defendants, on drug, gun,

and racketeering charges. (Doc. No. 2066, at 4-5, in Criminal Case No. 3:10-cr-00163);[1] *United*

*States v. Keairus Wilson & Rondarius Williamson,* 579 Fed. Appx. 338, 342 (6th Cir. 2014). Most

---

[1]    References to documents filed in the underlying criminal case will be referred to as "Crim. Doc. No.
___."

of the defendants entered plea agreements, but Petitioner and Co-Defendant Keairus Wilson elected to go to trial. *Id.* After a multi-week jury trial before Judge Aleta A. Trauger, Petitioner was convicted of the following offenses: conspiracy to participate in racketeering activity involving the murder of Andreus Taylor on May 18, 2009, in violation of 18 U.S.C. § 1962(d) (the Racketeering Influenced and Corrupt Organizations Act ("RICO")) (Count One); using or carrying a firearm during and in relation to a crime of violence (assault with a dangerous weapon) on February 9, 2009, in violation of 18 U.S.C. § 924(c) (Count Ten); murder of Andreus Taylor in aid of racketeering on May 18, 2009, in violation of 18 U.S.C. § 1959(a)(1) (the Violent Crimes in Aid of Racketeering ("VICAR") statute) (Count Eleven); using or carrying a firearm during and in relation to a crime of violence (murder of Andreus Taylor on May 18, 2009), in violation of 18 U.S.C. § 924(c) (Count Twelve); murder resulting from using or carry a firearm during and in relation to a crime of violence (murder of Andreus Taylor on May 18, 2009), in violation of 18 U.S.C. § 924(j) (Count Thirteen); using or carrying a firearm during and in relation to a crime of violence (robbery and carjacking on October 31, 2009), in violation of 18 U.S.C. § 924(c) (Count Fifteen); and conspiracy to use or carry firearms during and in relation to crimes of violence (conspiracy to participate in a racketeering enterprise, murder in aid of racketeering, and assault with a dangerous weapon in aid of racketeering), in violation of 18 U.S.C. § 924(o) (Count Twenty-Seven). (Crim. Doc. Nos. 1147, 1496, 1505).

The Sixth Circuit summarized the evidence adduced at trial relating to Petitioner, as follows:

> The Bloods are a street gang formed in Los Angeles during the 1970s. They have a longstanding rivalry with another gang called the Crips. The Eastside Skyline Pirus and the Treetop Pirus are both affiliates of the Bloods with local outfits in Nashville, Tennessee. The two Piru gangs sometimes collaborated and

2

operated in similar fashion.

To become a member of either gang, one first had to be 'beat in' – which involved existing members beating up aspiring members. Each gang had a hierarchy: A new member started out as a Tiny Gangster, and could advance in rank to Baby Gangster, Young Gangster, Young Original Gangster, Original Gangster, and, in some exceptional cases, double or triple 'OG.' A member advanced by 'putting in work' – that is, by 'fighting, shooting, basically being into it with the opposition, opposition meaning [C]rips.' Lower-ranked members had a 'Big Homie' – a mentor of sorts – higher in rank.

Each gang held regular meetings and had extensive rules. For instance, if an Original Gangster says 'go across the street and shoot this person, you need to do it.' And if a Crip 'disrespects' a member, then 'handle your business' – meaning 'assault them or possibly shoot them[,]' since '[i]t would be considered weak' not to. If a member violated the rules, he faced a 'trial and jury' of the gang's other members. By a majority vote, those members could kick him out of the gang. Or they could merely punish him. For example, one member, known as Jo-Jo, disrespected his Big Homie; other members took Jo-Jo out to a field, formed a circle around him, and beat him. By the end, Jo-Jo 'couldn't stand up' and 'was coughing up blood.'

\* \* \*

Rondarius 'Killa' Williamson was a member of the Treetop Pirus. In May 2009, he attended Maplewood High School's graduation ceremony at the Gentry Center, on the campus of Tennessee State University. The Gentry Center is a basketball arena with two levels of bleachers and a capacity exceeding 10,500. Williamson went to the ceremony with a few friends, including fellow gang member Terrence Jones. They went to the upper level and were joined later by two more gang members, Adrian Montgomery and Anthony 'Doo Daddy' Lampkins. The group remained in the upper level, watching the ceremony and 'chilling[.]' As the ceremony ended, people made their way to the exits. Persons in the upper level had to walk down stairs to reach the exits on the lower level. One stairwell led to a foyer with two exits about ten yards apart – one on the west side, one on the east side. The bottom of the stairwell was adjacent to the doors on the west side. Someone walked down those stairs, pulled out a gun, and shot towards the doors on the west side. The bullets hit a Gangster Disciple Crip named Andreus Taylor. Taylor tried to run away from the Gentry Center, but stumbled down a nearby hill. He died later that day.

(Crim. Doc. No. 2066, at 1-4).

At the sentencing hearing, Judge Trauger imposed the following sentence:

- Count One (RICO conspiracy) – life, concurrent with Counts Eleven, Thirteen, and Twenty-Seven;

- Count Ten (Section 924(c) – linked to assault on February 9, 2009) – 120 months, consecutive to all other counts;

- Count Eleven (VICAR Murder) – life, concurrent with Counts One, Thirteen, and Twenty-Seven;

- Count Twelve (Section 924(c) – linked to murder of Andreus Taylor) - 300 months, consecutive to all other counts;

- Count Thirteen (Section 924(j) – murder of Andreus Taylor resulting from use of firearm) – life, concurrent with Counts One, Eleven, and Twenty-Seven;

- Count Fifteen (Section 924(c) – linked to robbery and carjacking on October 31, 2009) – 300 months, consecutive to all other counts;

- Count Twenty-Seven (Section 924(o) – conspiracy to use or carry firearms) – 240 months, concurrent with Counts One, Eleven, and Thirteen.

(Crim. Doc. Nos. 1884, 1885).

On appeal, the Sixth Circuit rejected Petitioner's arguments based on insufficiency of the evidence, prosecutorial misconduct, and other alleged errors. (Crim. Doc. No. 2066). The Supreme Court subsequently denied Petitioner's petition for writ of certiorari. (Crim. Doc. Nos. 2123, 2131).

Petitioner filed the original motion to vacate in this case on January 25, 2016. (Doc. No. 1). Judge Trauger denied all Petitioner's claims in a Memorandum and Order issued on June 23, 2017, except Petitioner's claim that counsel provided ineffective assistance in connection with the plea-bargaining process. (Doc. Nos. 41, 42). Judge Trauger ordered the Government to present proof on that issue in the form of a declaration of defense counsel. (*Id.*) The case was subsequently transferred to the undersigned Judge. (Doc. No. 61). This Court thereafter considered the parties'

4

filings on the plea-bargaining issue, and ruled that Petitioner had not established trial counsel was ineffective in that regard. (Doc. Nos. 66, 67).

On June 24, 2019, the Supreme Court issued its decision in *United States v. Davis,* ___ U.S. ___, 139 S. Ct. 2319, 204 L.Ed.2d 757 (2019), holding the "residual clause" definition of "crime of violence" in 18 U.S.C. § 924(c)(3)(B) unconstitutionally void for vagueness. Some time later, on March 25, 2020, the Sixth Circuit granted Petitioner's request to file a second or successive motion to vacate under Section 2255 based on *Davis*. (Doc. No. 74). Petitioner has now filed his Second Motion to Vacate (Doc. No. 84), in which he challenges Count Twelve (violation of Section 924(c) – linked to murder of Andreus Taylor), as well as Count Twenty-Seven (Section 924(o) conspiracy to use or carry firearms). The issues have been fully briefed and the case is now ripe for decision.

### III. ANALYSIS

#### A. <u>Section 2255 Proceedings</u>

Petitioner has brought this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States,* 398 F.3d 855,

5

858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States,* 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007)).

Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

## B. Procedural Default

The Government takes the position that Petitioner procedurally defaulted his claims, and cannot make the showing required to excuse the default. When a petitioner has procedurally defaulted a claim by failing to raise it on direct appeal, the claim may be raised in collateral proceedings only if the petitioner demonstrates cause for the default and actual prejudice resulting from the alleged error, or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998); *Wade v. Timmerman-Cooper,* 785 F.3d 1059, 1076 (6th Cir. 2015). A court may proceed directly to the merits, however, when that path presents a more straightforward ground for decision than engaging in procedural-default analysis. *Wade,* 785 F.3d 1077 ("[O]n occasion, this court has reached beyond the procedural-default analysis to

6

address the underlying claim on the merits when it 'present[s] a more straightforward ground for decision.'") (quoting *Arias v. Hudson,* 589 F.3d 315, 316 (6th Cir. 2009)); *Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1977); *Johnson v. Lee,* ___ U.S. ___, 136 S. Ct. 1802, 1806, 195 L. Ed. 2d 92 (2016); *Sheard v. Klee,* 692 Fed. Appx. 780, 785 n.2 (6th Cir. 2017). That is the case here. Therefore, the Court will proceed directly to the merits of Petitioner's claim.[2]

## C.  <u>Murder in aid of racketeering</u>

In challenging the validity of his conviction on Count Twelve, Defendant relies on the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) and *United States v. Davis, supra.* In *Johnson*, the Supreme Court held the so-called "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), was unconstitutionally vague. The ACCA imposes a 15-year mandatory minimum sentence for defendants convicted of certain firearms offenses who have three previous convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). The "residual clause" is part of the italicized definition of "violent felony" as set forth below:

(2) As used in this subsection–

* * *

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –

(i) has as an element the use, attempted use, or threatened use of

---

[2]    The Government also raises the "law of the case" doctrine, based on a portion of Judge Trauger's ruling denying the original motion to vacate, which concluded that Petitioner's Section 924(c) predicate offenses satisfy the use-of-force clause. (Doc. No. 41, at 13). Given that the Sixth Circuit subsequently authorized Petitioner to challenge one of those predicates, the Court declines to rely on the "law of the case" doctrine here.

physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another. . .*

(emphasis added). The Court subsequently relied on *Johnson* in striking down the similarly-worded residual clause in 18 U.S.C. § 16. *Sessions v. Dimaya,* ___ U.S. ___, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018).

Based on these decisions, the defendants in *United States v. Davis* challenged their convictions under 18 U.S.C. § 924(c),[3] because the definition of "crime of violence" applicable to that offense contains a residual clause similar to that invalidated in *Johnson* and *Dimaya*. The Section 924(c) "crime of violence" definition provides as follows, with the residual clause set forth in italics:

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--

---

[3]    Section 924(c) provides:

(c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

8

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

Concluding that there was no material distinction between the residual clause in Section 924(c)(3)(B) and the residual clauses considered in *Johnson* and *Dimaya*, the *Davis* Court struck down Section 924(c)(3)(B) as unconstitutionally void for vagueness. 139 S. Ct. at 2326-27. The Sixth Circuit has subsequently held that *Davis* announced a new rule of constitutional law that applies retroactively to cases on collateral review. *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020).

Based on *Davis,* Petitioner's Section 924(c) conviction in Count Twelve is invalid if the underlying "crime of violence" alleged in the Second Superseding Indictment (murder in aid of racketeering) satisfies only the residual clause portion of the statutory definition. On the other hand, if the underlying crime satisfies Subsection (A) of the definition, often referred to as the "use-of-force" clause, as the Government argues here, the conviction is not affected by *Davis.*

As set forth above, the use-of-force clause describes offenses that have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The Supreme Court has defined the term "physical force" as "violent force – that is, force capable of causing physical pain or injury to another person." *[Curtis] Johnson v. United States*, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271, 176 L. Ed. 2d 1 (2010); *see also United States v. Rafidi,* 829 F.3d 437, 445 (6th Cir. 2016) (applying definition to Section 924(c)(A)); *Knight v. United States*, 936 F.3d 495, 499 (6th Cir. 2019) (same).

In determining whether an offense satisfies this definition, courts are to use the "categorical

approach," which focuses on the statute defining the offense rather than the facts underlying the actual crime. *See, e.g., Knight,* 936 F.3d at 498. If a statute is "divisible," in that it lists elements in the alternative to define multiple crimes, however, courts are to use the "modified categorical approach." *Id.* Under that approach, the court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine which portion of the statute the defendant violated. *Id.* (*citing Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005)). Once the elements are determined, the court must "focus on the minimum conduct criminalized" by those elements. *Moncrieffe v. Holder,* 569 U.S. 184, 191, 133 S. Ct. 1678, 185 L. Ed. 2d 727 (2013); *Fullum v. United States,* 756 Fed. Appx. 568, 570 (6th Cir. 2018). But the court is to keep in mind that there must be a "realistic probability, not a theoretical possibility" that the state would apply the statute to the "minimum conduct" in question. *Fullum,* 756 Fed. Appx. at 570.

The offense at issue here is murder in aid of racketeering, charged as the predicate offense in Count Twelve of the Second Superseding Indictment, as follows:

COUNT TWELVE
(Use and Carrying of Firearm During and in Relation to a Crime of Violence)

The Grand Jury Further Charges:

43.     The allegations of Paragraphs 1-11, 14-19, and 22-23 are hereby re-alleged and incorporated as if fully set forth herein.

44. On or about May 18, 2009, in the Middle District of Tennessee, the defendant [30] RONDARIUS WILLIAMSON, a/k/a 'Killa,' and others known and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to, and possess a firearm in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States, to wit, murder in aid of racketeering, as set forth in Count Eleven of this Superseding Indictment, which is incorporated here.

10

All in violation of Title 18, United States Code, Sections 924(c) and 2.

(Crim. Doc. No. 1147, at 46). Count Eleven, referenced in Count Twelve, alleged that Petitioner, in aid of racketeering, "did murder Andreus Taylor, in violation of the laws of the State of Tennessee, that is Tennessee Code Annotated Sections 39-13-201, 39-13-202, 39-11-401, and 39-11-402," in violation of 18 U.S.C. §§ 1959(a)(1)[4] and 2. (*Id.,* at 45).

Under the Tennessee statutes referenced in Count Eleven, "[c]riminal homicide" is defined as "the unlawful killing of another person, which may be first degree murder, second degree murder, voluntary manslaughter, criminally negligent homicide or vehicular homicide." Tenn. Code Ann. § 39-13-201. First degree murder is defined as the "premeditated and intentional killing of another," as well as felony murder, and killing by a destructive device or bomb. Tenn. Code Ann. § 39-13-402.[5]

As the Sixth Circuit pointed out when granting authorization to raise the challenge here, "Williamson's conviction for murder in aid of racketeering is premised on Tennessee's first-degree murder statute, Tenn. Code Ann. § 39-13-202." (Doc. No. 74, at 4). Petitioner argues that first

---

[4]    Section 1959, referred to as the VICAR statute, provides, in pertinent part, as follows:

(a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished –

(1) *for murder*, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both . . .

[5]    Tennessee Code Annotated Sections 39-11-401 and 39-11-402 address criminal responsibility.

11

degree murder, under Tennessee law, does not include an element of violence as required by the use-of-force clause because a person can be guilty of murder by surreptitiously putting poison in someone's beverage or food, citing *State v. Reeves,* 916 S.W.2d 909 (Tenn. 1996); *State v. McBride*, 1997 WL 661480 (Tenn. Crim. App. Oct. 24, 1997), or by withholding food and water, citing *State v. Bordis,* 1994 WL 672595, at *13 (Tenn. Crim. App. Dec. 1, 1994).

The Sixth Circuit has not specifically addressed the issue of whether first degree murder under Tennessee law constitutes a "crime of violence" under Section 924(c)(3)(A). The court has, however, rejected the argument that injuring someone by indirect force, like administering poison, does not involve a "use of force." In *United States v. Verwiebe,* 874 F.3d 258 (6th Cir. 2017), the court held that assault with a dangerous weapon, and assault resulting in serious bodily injury, qualified as "crimes of violence" under the Sentencing Guidelines version of the use-of-force clause.[6] In addressing the latter type of assault, the court explained that assault using indirect force resulting in serious bodily injury, such as poisoning, involves violent force sufficient to satisfy the use-of-force clause:

> Hoping for a different conclusion, Verwiebe invokes *United States v. Scott*, No. EP-14-CR-42-PRM, 2014 WL 4403162 (W.D. Tex. July 28, 2014), claiming it shows that assault under § 113(a)(6) is not a crime of violence because it may involve indirect force that causes serious bodily injury. In that case, the district court used the example of poisoning a victim's drink as evidence that § 113(a)(6) swept too broadly. *Id*. at *4. But we have refused to draw a line between direct and indirect force in this context. *United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012). And for ample reason. *A defendant uses physical force whenever his volitional act sets into motion a series of events that results in the application of a 'force capable of causing physical pain or injury to another person.' See id*. We see no problem with the poison scenario. The 'use of physical force' is not the drop of liquid in the victim's drink; it is employing poison to cause serious bodily harm. *See United States v. Castleman*, 572 U.S. 157, 134 S. Ct. 1405, 1415, 188 L. Ed. 2d 426 (2014). Under Verwiebe's theory, tripping somebody into oncoming traffic,

---

[6]   Section 4B1.2(s) of the Sentencing Guidelines defines "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."

or for that matter perpetrating a sarin gas attack, would not be a crime of violence. Creative minds, once unhinged from common sense, might even suggest that pulling the trigger of a gun is not a sufficiently direct use of physical force. Sentencing law does not turn on such fine, reality-defying distinctions.

874 F.3d at 261 (emphasis added); *see also Buffar v. United States,* 2019 WL 2869167, at *7 (M.D. Tenn. July 3, 2019) (applying *Verwiebe* to conclude that assault with intent to commit murder under Tennessee law is a "violent felony" under the use-of-force clause of the ACCA). Thus, under *Verwiebe,* a defendant's actions that result in the victim's death necessarily involve physical force even if the force applied is indirect. In other words, it is causing the death of the victim by poisoning, or by withholding food, that constitutes the use of force. Based on this reasoning, Petitioner's death-by-poisoning and death-by-starvation arguments fail.[7]

Other courts have applied this same logic in determining that first degree murder under various state statutes satisfies the use-of-force clause. For example, in considering similar claims by two of Petitioner's co-defendants, Judge Trauger specifically held that the same Tennessee statutes at issue here satisfy the use-of-force clause. *See United States v. Montez Hall,* 2021 WL 119638, at *8 (M.D. Tenn. Jan. 13, 2021) ("Regardless of the approach employed and regardless of how broadly murder is defined by the underlying state statute, courts have unanimously agreed

---

[7]    To the extent the courts in *United States v. Mayo*, 901 F.3d 218, 227 (3d Cir. 2018) and *United States v. Scott,* 954 F.3d 74, 77 (2nd Cir. 2020), cited by Petitioner, rely on the distinction between direct force and indirect force, their reasoning conflicts with *Verwiebe,* and therefore, the Court declines to follow them here. The Court also notes that, after Petitioner filed his brief, the Second Circuit vacated the panel opinion in *Scott,* and held, in an *en banc* decision, that New York first-degree manslaughter is a categorically violent crime under the use-of-force clauses of the ACCA and the Sentencing Guidelines "whether a defendant acts by commission or omission. . ." *United States v. Scott,* 990 F.3d 94, 113 (2nd Cir. 2021).

The Court is also unpersuaded that the Sixth Circuit's decision in *Dunlap v. United States,* 784 Fed. Appx. 379, 388-89 (6th Cir. 2019), cited by Petitioner, requires a different result. In *Dunlap,* the court held that a Tennessee aggravated assault statute did not satisfy the ACC use-of-force clause because the statute criminalized the failure to protect a child or adult from aggravated assault committed by someone else. Petitioner has not explained why committing murder by starvation, or by poison, should be equated with failing to prevent an aggravated assault committed *by someone else.*

13

that murder, including murder by starvation or other acts of omission, is a crime of violence."); *Wilson v. United States*, 2021 WL 1088178, at *8 (M.D. Tenn. Mar. 22, 2021) (same). Similarly, in *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019), the Fourth Circuit held that first degree murder under Virginia law satisfies the use-of-force clause under Section 924(c)(3)(A) even if the crime could be accomplished by poisoning: "[S]o long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent." In *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018), the Eighth Circuit held that attempted murder under Iowa law qualifies under the use-of-force clause of the Sentencing Guidelines even if the crime could be accomplished by omission, such as a caregiver withholding sustenance to a dependent: "In Peeples's example of a care-giver refusing to feed a dependent, it is the act of withholding food with the intent to cause the dependent to starve to death that constitutes the use of force . . . It does not matter that the harm occurs indirectly as a result of malnutrition." *See also Shrader v. United States,* 2019 WL 4040573, at *3 (S.D.W. Va. Aug. 27, 2019) (holding that murder under West Virginia law, which includes murder by poisoning or starvation, satisfies the use-of-force clause in the ACCA); *United States v. Kirby*, 2017 WL 4539291, at *11 (D.N.M. Feb. 16, 2017) (holding that attempted murder under New Mexico law satisfies the use-of-force clause in the ACCA because ". . . intentionally caus[ing] any effect that could so damage a person's body as to end his life is necessarily an act of extreme violence, no matter the indirectness of the means employed to bring about the fatal consequence."); *Sanchez v United States,* 2021 WL 1164538, at *3-5 (S.D.N.Y. March 25, 2021) (holding that murder and attempted murder under New York law, even if committed via poison or omission, satisfies Section 924(c)(3)(A)).

14

The Government, and certain other courts, have taken the approach that, in analyzing whether murder in aid of racketeering under 18 U.S.C. § 1959 constitutes a "crime of violence," a court is to consider the elements of "generic" murder, rather than murder as defined by Tennessee law. Even if the court engages in that analysis, however, the outcome is the same. It is now well-established that generic murder, generally held to be analogous to 18 U.S.C. § 1111,[8] criminalizes the killing of the victim, which involves a level of force sufficient to satisfy the use-of-force clause. *See, e.g., United States v. Arnold,* 2019 WL 5842925, at *3 (E.D. Mich. Nov. 7, 2019) (holding that "generic" VICAR murder is analogous to 18 U.S.C. § 1111, which qualifies as a "crime of violence" under the use-of-force clause); *Montez Hall v. United States,* 2021 WL 119638, at *8-9; *Keairus Wilson v. United States,* 2021 WL 1088178, at *5-8; *see also* (Doc. No. 74, at 3 (In Order authorizing Petitioner's claim, Sixth Circuit states "Williamson's predicate offense of murder as defined in 18 U.S.C. § 1111" qualifies as a crime of violence under Section 924(c)(3)(A)).

For these reasons, Petitioner's argument that murder in aid of racketeering is not a "crime of violence" for purposes of Section 924(c) is without merit, and his challenge to Count Twelve fails.

---

[8]   Section 1111 provides, in pertinent part, as follows:

> (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

> Any other murder is murder in the second degree.

15

## D. Conspiracy to participate in a racketeering enterprise

In the Second Motion to Vacate (Doc. No. 84), Petitioner also argues that conspiracy to participate in a racketeering enterprise, alleged as one of the predicate offenses in Count Twenty-Seven for a violation of Section 924(o), does not qualify as a crime of violence under the use-of-force clause (only under the now-invalid residual clause). (Crim. Doc. Nos. 1147, 1505). Petitioner contends that RICO conspiracy, which requires only an *agreement* to violate the RICO statute, does not require any use of physical force. The Government argues, on the other hand, that the Court should not consider this argument because it was not referenced in the Sixth Circuit's decision authorizing Petitioner to file a second or successive motion to vacate.

Section 2255(h) provides that "[a] second or successive motion must be certified . . . by a panel of the appropriate court of appeals . . ." Through this authorization process, the appeals courts exercise "careful gatekeeping" of second or successive motions to vacate. *See, e.g., United States v. Rose*, 2019 WL 6212664, at *6 (S.D. Ohio Nov. 21, 2019); *Wilson v. United States,* 2021 WL 1088178, at *8-9.

In the Order authorizing Petitioner to file a second motion to vacate, the Sixth Circuit stated:

> Williamson meets the statutory criteria for filing a second or successive § 2255 motion. *Davis* is a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, *see, e.g.*, *In re Franklin*, 950 F.3d 909, 911 (6th Cir. Mar. 3, 2020) (per curiam); *In re Perez*, No. 19-6056, slip op. at 2 (6th Cir. Jan. 27, 2020) (order) (citing *In re Hammoud*, 931 F.3d 1032, 1038-39 (11th Cir. 2019)), and, therefore, *Davis* might apply to Williamson's case. Williamson's predicate offenses of murder as defined in 18 U.S.C. § 1111 (which underlies his § 924(j) conviction), assault with a dangerous weapon in aid of racketeering (which underlies one of his § 924(c) and his § 924(o) convictions), Hobbs Act robbery (which underlies one of his § 924(c) convictions), and carjacking (which underlies one of his § 924(c) convictions) qualify as 'crimes of violence' under the 'elements' clause of § 924(c)(3)(A). *See United States v. Darden*, 346 F. Supp. 3d 1096, 1133-

34 (M.D. Tenn. 2018) (murder under § 1111); *Manners v. United States*, 947 F.3d 377, 381-82 (6th Cir. 2020) (assault with a dangerous weapon); *United States v. Gooch*, 850 F.3d 285, 291-92 (6th Cir. 2017) (Hobbs Act robbery); *United States v. Jackson*, 918 F.3d 467, 484-86 (6th Cir. 2019) (carjacking). But his other predicate offense might not and therefore may no longer qualify as a crime of violence after *Davis.*

Williamson's conviction for murder in aid of racketeering is premised on Tennessee's first degree murder statute, Tenn. Code. Ann. § 39-13-202. We have already granted Williamson's codefendant authorization to file a second or successive § 2255 motion because our precedents do not 'conclusively establish that a violation of Tenn. Code Ann. § 39-13-202(a)(1) is categorically a crime of violence in that it involves the use of violent physical force.' *In re Wilson*, No. 18-6058, 2019 U.S. App. LEXIS 4626, at *3–6 (6th Cir. Feb. 14, 2019). *To the extent that the predicate murder-in-aid-of-racketeering offense underlying one of his § 924(c) convictions is premised on section 39-13-202, Williamson, like his co-defendant, has made a prima facie showing that this offense might no longer qualify as a crime of violence.*

In light of the foregoing, Williamson's claim that he is entitled to relief pursuant to *Davis* 'warrant[s] a fuller exploration in the district court.' *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)). We therefore **GRANT** his motion for authorization to file a second or successive § 2255 motion.

(Doc. No. 74, at 3-4) (emphasis added).

As the Order indicates, the Sixth Circuit authorized the Court to consider whether murder in aid of racketeering qualifies as a crime of violence under the use-of-force clause. It did not authorize the Court to explore whether conspiracy to participate in a racketeering enterprise qualifies under that clause. Thus, the Court concludes that the issue is beyond the scope of the authorization.

In any event, as Judge Trauger pointed out in considering a co-defendant's argument on this point, a review of the *Shepard* documents in Petitioner's criminal case indicates that resolution of the issue is unnecessary to sustain Petitioner's conviction of Count Twenty-Seven. The indictment and verdict form indicate that Petitioner was charged with, and convicted of, the

17

predicate offense of conspiracy to participate in a racketeering enterprise as a stand-alone count (Count One). (Crim. Doc. Nos. 1147, 1505). As part of the guilty verdict on that count, and in order to apply a statutory sentencing enhancement, the jury was asked and specifically found that "With respect to the charge in Count One," Petitioner "committed the premeditated and intentional killing of Andreus Taylor on May 18, 2009 . . ." (Crim. Doc. No. 1505, at 2). Therefore, Petitioner's argument that the conspiracy offense cannot be considered a crime of violence under the use-of-force clause is inapposite because the jury did not simply find the Petitioner guilty of conspiracy; they specifically found Petitioner committed murder in furtherance of the conspiracy. And, as discussed above, murder qualifies as a crime of violence under Section 924(c)(3)(A). Thus, Petitioner's challenge to RICO conspiracy as a predicate offense is without merit, and his challenge to Count Twenty-Seven fails.

## IV.   CONCLUSION

For the reasons set forth above, Petitioner's Second Motion to Vacate (Doc. No. 84) is **DENIED.**

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

18